IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-614-D

| | |
|---|---|
| SHANTEL WARE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Shantel Ware ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Social Security Income ("SSI") benefits. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE #17] be denied, Defendant's

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security as a defendant to this action. Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

Motion for Judgment on the Pleadings [DE #20] be granted, and the Commissioner's decision be upheld.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for SSI on October 7, 2008, and an application for a period of disability and DIB on October 22, 2008, alleging disability beginning March 1, 2007. (R. 10.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 88-91, 102-03, 115-16, 120-21.) On April 3, 2010, a hearing was held before Administrative Law Judge Barry Peffley, who issued an unfavorable ruling on April 28, 2010. (R. 10, 18-19.) On June 22, 2011, the Appeals Council denied Plaintiff's request for review. (R. 1.) Plaintiff then sought judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g). (R. 531-32.) On December 20, 2012, the Honorable James C. Dever III, Chief United States District Judge for the United States District Court for the Eastern District of North Carolina, remanded the case pursuant to sentence four of 42 U.S.C § 405(g). *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *1-4 (E.D.N.C. Dec. 20, 2012).

On June 18, 2013, the Appeals Council vacated the previous decision of the Commissioner and remanded the case to an administrative law judge for a new hearing. (R. 544.) On November 21, 2014, a hearing was held before Administrative Law Judge Mason Hogan ("ALJ"), who issued an unfavorable ruling on April 7, 2015. (R. 468, 485-86.) On September 19, 2015, the Appeals Council denied Plaintiff's request for review. (R. 455.) Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

# DISCUSSION

## I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant:

3

(1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since June 25, 2008[2] and meets the insured status requirements through December 31, 2012. (R. 470-71.) Next, the ALJ determined Plaintiff had the following severe impairments: "an affective disorder, an anxiety disorder, attention deficit hyperactivity disorder, borderline intellectual functioning, and marijuana abuse." (R. 471.) The ALJ also found that Plaintiff had the following non-severe impairments: obesity, mild obstructive sleep apnea, gastroesophageal reflux disorder (GERD), hypertension,

---

[2] On November 21, 2014, Plaintiff amended the alleged onset date through a statement signed by her and by her counsel. (R. 617.)

hyperlipidemia, history of right ankle fracture, uterine fibroids, dermatitis, acute cutaneous lupus erythematosus, history of alcohol abuse, and history of cocaine abuse. (R. 471.) However, at step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 472-74.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the ability to perform work at all exertional levels with the following nonexertional limitations:

> [T]he claimant can understand, remember, and carry out simple instructions, which is defined to mean activity that is consistent with a reasoning level of "two" or "three" as defined in the <u>Dictionary of Occupational Titles</u>; can work in proximity to, but not [in] coordination with, coworkers and supervisors; can work in a low stress setting, which is specifically defined to mean: no fast paced production, only simple work related decisions, few or no changes in the work setting, and only superficial contact with the public.

(R. 474.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (R. 475.) At step four, the ALJ concluded Plaintiff did not have the RFC to perform any past relevant work. (R. 482.) At step five, the ALJ concluded, based on Plaintiff's age, education, work experience, and RFC, that she could adjust to other work that exists in significant numbers in the national economy. (R. 485.)

## IV. Plaintiff's Contentions

Plaintiff raises three arguments: (1) the ALJ erred by determining Plaintiff is severely impaired by Affective Disorder rather than Bipolar Disorder; (2) the ALJ's

5

opinion discussing the step-three analysis does not explicitly discuss Dr. Shabbir Chowdhury's Mental Impairment Questionnaire ("questionnaire") and therefore violates the remand order from Chief Judge Dever; and (3) the ALJ erred by not assigning controlling weight to Dr. Chowdhury's opinions in the questionnaire and by failing to explain the weight assigned to these opinions. (Pl.'s Mem. Supp. J. Pldgs. [DE #18] at 6-13.) Each argument will be addressed in turn, but the core issue is whether there is substantial evidence to support the ALJ's decision to give little weight to Dr. Chowdhury's opinions in the questionnaire. Because the undersigned finds that substantial evidence supports that decision, it is recommended that the Commissioner's decision be upheld.

### A. Severe Impairments Determination

Plaintiff contends that the ALJ erred at step three by determining that she is severely impaired by, *inter alia*, Affective Disorder and not severely impaired by Bipolar Disorder. (*Id.* at 6-8.)

A "severe" impairment within the meaning of the regulations is one that "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities."[3] 20 C.F.R. §§ 404.1520(c), 416.920(c). Conversely, an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an

---

[3] Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs." *Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir. 1986) (citing 20 C.F.R. § 416.921(b)). For example, work activities might include walking, standing, sitting, lifting, pushing, pulling, and reaching; the capacity to see, hear and speak; and understanding, carrying out, and remembering simple instructions. *Id.*

individual's ability to work even if the individual's age, education, or work experience were specifically considered." SSR 85-28, 1985 WL 56856, at *3 (Nov. 15, 1985); *see also Evans v. Heckler,* 734 F.2d 1012, 1014 (4th Cir. 1984). The claimant has the burden of demonstrating the severity of her impairments. *Pass*, 65 F.3d at 1203.

At step two of the sequential evaluation process, the ALJ must determine whether a claimant's impairment(s), individually or in combination, are "severe." 20 C.F.R. §§ 404.1523, 416.923. So long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process. *Id.*; *see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (explaining that the existence of one or more severe impairments requires the ALJ to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").

Courts have found that an ALJ's failure to find a particular impairment severe at step two does not constitute reversible error where the ALJ determines that a claimant has other severe impairments and proceeds to evaluate all the impairments at the succeeding steps in the evaluation. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (agreeing with various circuit and district courts that "it is not reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation *provided the ALJ considers that impairment in subsequent steps*" (emphasis added)) (citing, *inter alia*,

7

*Hill v. Astrue,* 289 Fed. App'x 289, 292 (10th Cir. 2008) and *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987)).

Here, the ALJ found that Plaintiff suffered from multiple severe impairments at step two and proceeded to step three. Therefore, the issue is whether the ALJ failed to consider impairments associated with Plaintiff's Bipolar Disorder in the subsequent steps of the decision. The ALJ discussed at length the opinion of the only doctor or mental health professional[4] to diagnose Plaintiff with Bipolar Disorder and to suggest that Plaintiff's impairments disable her. (R. 480-81.)

The ALJ provided at least seven reasons for giving little weight to Dr. Chowdhury's opinions in the questionnaire:

(1) Dr. Chowdhury was operating under the incorrect belief that Plaintiff had systemic lupus;

(2) The questionnaire was completed early in the treatment process and after Dr. Chowdhury had seen Plaintiff only three times;

(3) The medical evidence in the record—including Dr. Chowdhury's questionnaire—showed that Plaintiff's symptoms lessened in response to treatment;

---

[4] Plaintiff states that "multiple diagnostic sources, including other psychiatrists and psychologists have diagnosed Ms. Ware with major depressive disorder, bipolar disorder and anxiety disorders." (Pl.'s Mem. Supp. J. Pldgs. [DE #18] at 11.) But neither the record nor the Plaintiff identifies a treating or examining source aside from Dr. Chowdhury who indicates Plaintiff was diagnosed with Bipolar Disorder.

8

(4) Contemporaneous treatment notes do not reflect many of the symptoms reported in the questionnaire, *e.g.* no evidence of manic syndromes in treatment notes;

(5) There is no explanation from Dr. Chowdhury about conclusions regarding marked difficulties and extreme limitations;

(6) The questionnaire form is internally inconsistent, *i.e.* the form states that Plaintiff is moderately limited in her ability to understand short and simple instructions but then states there is no evidence of Plaintiff's ability to understand long and detailed instructions; and

(7) Plaintiff provided no supplemental evidence to clarify or bolster Dr. Chowdhury's questionnaire even though four years had passed since the date of the questionnaire.

(R. 481.) Such reasoning demonstrates that the ALJ considered the impairments listed in Dr. Chowdhury's questionnaire that could have risen to the level of "severe" for purposes of an SSI and DIB application. Therefore, any error regarding this issue is harmless.

### B. Step-Three Analysis

Plaintiff next argues that the ALJ erred at step three by failing to discuss explicitly the weight he assigned to Dr. Chowdhury's opinions contained in the questionnaire. Plaintiff notes that Chief Judge Dever's remand order specifically stated that the ALJ "should reconsider the statement at step three that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria

of any listed impairment.'" *Ware*, 2012 WL 6645000, at *3. Chief Judge Dever also stated that "[i]t is unclear whether the ALJ considered Dr. Chowdhury's opinion in analyzing the section 12.04 criteria." *Id.*

The seven reasons listed above that the ALJ gave to support his decision regarding the weight of Dr. Chowdhury's opinion demonstrate that the ALJ considered Dr. Chowdhury's opinion as directed by the remand order. The gravamen of the remand order was that "[t]he ALJ failed to give 'good reasons' for the weight assigned to Dr. Chowdhury's opinion" in violation of 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See Ware*, 2012 WL 6645000, at *3. That the ALJ failed to cut-and-paste the paragraph explaining his reasons for discounting the weight of Dr. Chowdhury's opinion into the step-three section of the written opinion in addition to the step-four section is not reversible error.

### C. Treating Physician Rule and RFC

Plaintiff challenges the Commissioner's decision denying benefits on the grounds that the ALJ violated the Treating Physician Rule by failing to weigh properly medical opinions of her treating physician that appear in the record and that this error infected the RFC determination.

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). An ALJ must "explain how any material inconsistencies

10

or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R §§ 404.1527(b)-(c), 416.927(b)-(c). Medical opinions are "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

A treating source is a "physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. Controlling weight will be given to "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Craig,* 76 F.3d at 590.

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to give the opinion by applying the following factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with

11

the record as a whole; (5) whether the physician is a specialist in the field in which the opinion is rendered; and (6) any other relevant factors brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)-(6); see also *Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011). "The ALJ is not required to discuss all of these factors." *Ware,* 2012 WL 6645000, at *2 (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) and *Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008)). "However, the ALJ must give "good reasons" for the weight assigned to a treating source's opinion." *Ware*, 2012 WL 6645000, at *2 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

As discussed above in subsection A, the ALJ provided at least seven reasons for the weight he gave to Dr. Chowdhury's opinion. The ALJ's explanation specifically addresses the factors listed in 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)-(6).

Plaintiff cites no evidence in the record that contradicts any of the ALJ's reasons other than that she has a reported Global Assessment of Functioning ("GAF") scale between forty-five and fifty-one, and that such scores in the "Diagnostic and Statistical Manual, Fourth Edition . . . reflect serious impairments in social and occupational functioning." (Pl.'s Mem. Supp. J. Pldgs. [DE #18] at 10-12.) This argument fails for two reasons: (1) the ALJ cites to substantial evidence in the record to support his conclusion that Plaintiff's impairments in social and occupational functioning are not disabling, and (2) serious impairments in social and occupational functioning are not necessarily disabling for purposes of the Social Security Act.

Because there is substantial evidence in the record to support the ALJ's decision to give Dr. Chowdhury's opinion little weight, Plaintiff's assignment of error in this regard should be rejected.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #17] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE #20] be GRANTED, and the Commissioner's decision be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 21, 2017**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the

13

Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 7th day of February 2017.

_____
KIMBERLY A. SWANK
United States Magistrate Judge